Louis J. Willey, *Individually, et al.*

*v.*

The Travelers Indemnity Company, *a corporation*

(No. 13036)

Submitted September 26, 1972. Decided December 21, 1972.

*Donell, Tarr, DeLaMater & Hagg, W. Dean DeLaMater, Floyd R. Tarr, Thomas D. Hagg,* for appellant.

*Martin S. Bogarad, Leonard Z. Alpert,* for appellees.

CAPLAN, JUDGE:

Louis J. Willey, individually and as Administrator of the Estate of Helen L. Willey, deceased, instituted an action in the Circuit Court of Hancock County against the defendant, The Travelers Indemnity Company, a corporation, seeking recovery of a certain sum of money which he alleged was due and owing under the terms of a personal automobile insurance policy purchased by him from the defendant. Upon trial of this matter before a jury a verdict was returned in favor of the plaintiff and damages were assessed in the sum of $10,000.00, plus 6% interest. Thereafter judgment was entered on the verdict in the amount of $11,250.00, said sum being the $10,000.00 face amount of the policy, plus 6% interest from August 15, 1967, or an additional $1,250.00. A motion for a new trial having been overruled, the defendant prosecutes this appeal.

On June 9, 1967, while the aforesaid policy was in full force and effect, Helen L. Willey was severely injured in an automobile accident in Washington County, Pennsylvania. She suffered extensive fractures of her hand, leg, hip and jaw and was admitted as a patient to the Washington Hospital where she remained for a period covering the next nine weeks. She seemed to have made satisfactory progress in the treatment of her fractures and appeared to be getting along fairly well until the latter part of July when her general health began to deteriorate. While the record does not readily reveal Mrs. Willey's age, she was referred to as an elderly woman.

At approximately 8:40 A.M. on August 15, 1967, Dr. John H. Hall, Jr., her treating physician, visited her and observed, according to the hospital records: "Condition most critical; unconscious-cyanotic . . . tube feeding not too successful. Can't last much longer. Will not carry out any 'heroic' measures." About ten hours later on the same day Mrs. Willey passed away. The Certificate of Death, signed by Dr. Hall, showed the cause of death as "cerebrovascular thrombosis due to arteriosclerosis". Mrs. Willey was buried on August 19, 1967 but on September 20, 1967 her body was exhumed for the purpose of an autopsy which was performed by Dr. Cyril H. Wecht with Dr. Robert C. Lyons. Dr. Lyons was directed by Travelers to observe and take part in the autopsy.

In his amended complaint the plaintiff alleged that by virtue of the subject insurance policy Travelers Indemnity Company owed him in his individual capacity the sum of $10,000.00 because of the death of his wife, Helen L. Willey, whose life was insured by said policy and who died on August 15, 1967 as the proximate result of an automobile accident which occurred on June 9, 1967.

The defendant moved to dismiss the amended complaint, the principal ground being that the plaintiff failed to allege sufficient facts to show compliance with the terms and conditions precedent of the insurance policy. In its answer to the amended complaint the defendant further demonstrated the basis for its motion to dismiss. Therein it denied liability for the reason that the plaintiff failed to file with defendant a written proof of claim as provided in Condition 6 of the policy. The issue was joined when, in said answer, the defendant "specifically denied that the automobile accident on June 9, 1967, in Washington County, Pennsylvania, or any injuries which might have resulted therefrom to the deceased, Helen L. Willey, proximately caused her death on August 15, 1967."

The motion to dismiss was overruled and, after pretrial conference and the order pursuant thereto were held and

entered, the case proceeded to trial. During the trial the defendant moved for a directed verdict at the conclusion of the plaintiff's evidence and upon the presentation of all the evidence, both of which motions were overruled. A charge was given to the jury by the court, portions of which were objected to by the defendant; also, certain instructions offered by the defendant were refused. In this posture the case went to the jury, which, as aforesaid, returned a verdict in the sum of $10,000.00, plus 6% interest.

Although numerous errors are assigned by the defendant two principal issues evolve on this appeal, which, when resolved, are dispositive of this case. These issues are: (1) Does the failure of the plaintiff to file a proof of claim, in the circumstances of this case, preclude recovery under the insurance policy? (2) Did the plaintiff carry the burden of proof sufficiently to show that the death of the insured resulted directly and independently of all other causes from bodily injury caused by the accident as required by Coverage F of the subject insurance policy?

It is undisputed that under Condition 6 of the insurance policy a written proof of claim of the injury or death shall be submitted to the company as soon as practicable; nor is it disputed that the plaintiff failed to submit such written proof of claim. Thus, directly presented is the issue as to whether such failure on the part of the plaintiff precludes recovery in this case.

This Court, in many decisions, has acknowledged that furnishing a proof of claim required as a condition in an insurance policy, is a condition precedent to recovery under the policy. *Maynard v. National Fire Insurance Company of Hartford,* 147 W.Va. 539, 129 S.E.2d 443; *Adkins v. Globe Fire Insurance Co.,* 45 W.Va. 384, 32 S.E. 194; *Peninsular Land Transportation & Manufacturing Co. v. Franklin Insurance Co.,* 35 W.Va. 666, 14 S.E. 237; 44 AM. JUR. 2d, *Insurance,* Section 1455. The above cited cases, however, readily reveal that the requirement of a proof of claim may be waived by the insurer and that

such waiver need not be expressed but may be implied from the conduct of the insurer. 45 C.J.S., *Insurance,* Section 672; 44 Am. Jur. 2d, *Insurance,* Section 1509.

The proof of claim requirement is included as a condition of a policy for the benefit of the insurer. Its purpose is to allow such insurer to acquire information upon which it can form an intelligent estimate of its liabilities and to afford it an adequate opportunity for investigation of the claim. 44 Am. Jur. 2d, *Insurance,* Section 1455. While the following quote is under a section relating to fire insurance, it nonetheless demonstrates the general objective of a proof of claim. It is succinctly stated in 45 C.J.S., *Insurance,* Section 1006: "The object of notice is to acquaint insurer of the occurrence of the loss, so that it may make proper investigation and take such action as may be necessary to protect its interests. The object of the proofs is to furnish insurer with the particulars of the loss and all data necessary to determine its liability and the amount thereof."

There is no sanctity to the proof of claim itself and, as aforesaid, it may be waived or the insurer by its conduct may be estopped from asserting the failure to supply it to effect a forfeiture. If the need for the proof of claim is obviated by the action of the insurer, the failure to furnish it by the insured may be excused. "The courts being loath to enforce a forfeiture, * * * are prompt to seize on any circumstances which indicate a waiver on the part of the company, or which will raise an estoppel against it." 45 C.J.S., *Insurance,* Section 672. See *General Fidelity Life Insurance Company v. Bank of Callao,* 206 Va. 582, 145 S.E.2d 212.

The instant case involves the death of the insured. The allegation is that the death was caused by injuries received in an automobile accident for which the insurer is liable under the policy. It cannot be successfully disputed that the insurer had full knowledge of the death. This is readily reflected by the testimony of Dr. Robert C. Lyons, a witness for the defendant, who testified that he

was "contacted by Travelers Indemnity Company to observe and take part in an autopsy on one, Helen Willey". By having full knowledge of the death and taking part in the autopsy, it certainly was reasonable for the plaintiff to believe that the insurer was, at most, questioning only the cause of death as it related to the provisions of the policy and that there was no further need to furnish a proof of claim. In this circumstance and considering the purpose of a proof of claim, as hereinbefore expressed, how was the defendant in any manner prejudiced? The obvious answer is that it was not. The accident was unquestionably covered by the policy. The only question left was whether the injuries received in the accident were the sole cause of death. By reason of its knowledge of the death and by its conduct in participating in the autopsy it is clear that it had the means of being fully informed as to the cause of death. It had every opportunity to prepare its defense against the claim of the plaintiff. The insurer, in the circumstances of this case, would be in no better position had it been furnished a written proof of claim by the plaintiff. We are of the firm belief, therefore, that the defendant insurer, by reason of its conduct and the particular facts of this case, is estopped from denying this claim on the basis of the plaintiff's failure to submit a formal proof of claim.

As noted by the court in its order overruling the Motion for Judgment or for New Trial, the proof of claim issue was ruled on by Judge McClure when he overruled the former Motion to Dismiss. The court adopted Judge McClure's position, holding that the instant claim would not be denied on the basis of the alleged failure of the plaintiff to comply with Conditions 5 and 6 of the policy. While it does not appear on what basis the trial court made its ruling, we are of the opinion that such ruling and judgment entered thereon are correct.

This Court, in Point 3 of the Syllabus in *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466, demonstrated the foregoing with the following: "This Court may, on

appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." See *Wilkinson v. Searls,* 155 W.Va. 475, 184 S.E.2d 735; *State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 134 S.E.2d 730; *Rollins v. Daraban,* 145 W.Va. 178, 113 S.E.2d 369; and *Case v. Shepherd,* 140 W.Va. 305, 84 S.E.2d 140.

The second issue to be resolved on this appeal, that is, whether death was caused by injuries received in the automobile accident, independently of all other causes, requires the consideration of testimony adduced at the trial. No question exists as to whether such accident is covered by the subject policy. The only matter remaining for resolution, therefore, is the cause of death. On this there was much conflicting testimony, as reflected by the testimony of Dr. Cyril H. Wecht, a witness for the plaintiff, and that of Dr. Robert C. Lyons and Dr. Robert S. Totten, witnesses for the defendant.

Dr. Wecht, who qualified without objection as an expert medical witness, testified unequivocally that Mrs. Willey died as the result of injuries received in the automobile accident. Replying to a hypothetical question read to him on direct examination, Dr. Wecht said: "In my opinion, Mrs. Willey died as the result of the blood clot, the pulmonary embolism which is the technical name for it, the blood clot that we talked about that extended from the right side of the heart through the valve and into the pulmonary artery, and it is further my opinion that that blood clot arose as the result of her leg injuries, her hip fracture and her confinement to bed."

Dr. Wecht further testified in great detail as to how, in his opinion, the blood clot resulting in the pulmonary embolism formed and that, in his opinion, it stemmed from the fractures of Mrs. Willey's leg, such fractures having been received in the automobile accident. The

following questions, answers and colloquy appear in the record:

> "Q. Now, Dr., can you tell us whether or not, in your opinion, the death of Helen Willey was caused as the result of this emboli that you are talking about independent of all other causes from the bodily injury which she sustained in the accident I described?
>
> A. Yes sir.
>
> Mr. Delamater: I will object to that. It is a legal conclusion.
>
> The Court: I think it is calling for a medical conclusion and the Dr. has qualified as a forensic pathologist.
>
> A. Yes, in my opinion, it was independent of everything else * * * ."

At another time during his examination Dr. Wecht testified, "I think that the blood clot came from the injuries primarily in the left hip and leg independent of other causes."

It, of course, was the position of Dr. Lyons and Dr. Totten, testifying on behalf of Travelers, that the death of Mrs. Willey was the result of causes other than the injuries suffered in the accident. They asserted that the death was caused by a combination of causes, including disease processes and advanced age. Despite lengthy and detailed cross-examination, Dr. Wecht persisted in his opinion expressed above. This culminated on cross-examination as follows: "Q. By the same token, you can't say that she died of pulmonary embolism? A. I can and I have. This is my opinion, that she died of pulmonary embolism."

In view of the highly conflicting evidence adduced at the trial, it is elemental that the factual determination as to the cause of Mrs. Willey's death was, upon proper instructions from the court, for the jury. As stated in the court's charge, the members of the jury are the judges of the facts; they are the judges of the credibility of the

witnesses; and they shall be the determiners of the weight to be given to the testimony of each witness. The language of Point 3 of the Syllabus of *Western Auto Supply Company v. Dillard,* 153 W.Va. 678, 172 S.E.2d 388 forcefully reflects the foregoing, as follows: "It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed by this Court." See *Beneficial Finance Company v. Collins,* 150 W.Va. 655, 149 S.E.2d 221; *Nesbitt v. Flaccus,* 149 W.Va. 65, 138 S.E.2d 859; *Campbell v. Campbell,* 146 W.Va. 1002, 124 S.E.2d 345; *Overton v. Fields,* 145 W.Va. 797, 117 S.E.2d 598.

The jury in the instant case has considered the facts presented to it and has made a determination. The testimony being in conflict and there being evidence to support its verdict, such verdict will not be disturbed on appeal.

The defendant questioned the propriety of the hypothetical question asked of Dr. Wecht, contending that it assumed facts not supported by the evidence and having been submitted in that manner constituted a basis for reversal. We are well aware of the general rule relating to hypothetical questions as noted in *Blair v. Clark Coal & Coke Company,* 107 W.Va. 507, 148 S.E. 849, wherein the Court held: "A hypothetical question which assumes facts unsupported by the evidence should not be submitted to an expert witness." However, the Court stated in *State v. Lewis,* 133 W.Va. 584, 57 S.E.2d 513, that, "A hypothetical question need not cover all the facts but the party propounding the question may assume facts fairly inferable from the evidence which tends to support his theory of the case."

Of pertinence to the consideration of the defendant's contention is Point 5 of the Syllabus in *Parr v. Coca-Cola Bottling Works of Charleston,* 121 W.Va. 314, 3 S.E.2d 499, which reads as follows: "It does not constitute error

to permit a hypothetical question to be answered to which only a general objection is interposed." Demonstrating that the rule enunciated in the *Parr* case is the general rule in this jurisdiction are the following cases: *State v. Comstock,* 137 W.Va. 152, 70 S.E.2d 648; *Frampton v. Consolidated Bus Lines, Inc.,* 134 W.Va. 815, 62 S.E.2d 126; *State v. Lewis, supra; Hazelrigs v. City of Huntington,* 116 W.Va. 757, 182 S.E. 877; and, *Adams v. G. C. Murphy Co.,* 115 W.Va. 122, 174 S.E. 794.

Applying the foregoing to the instant case, it is noted that the following objection was interposed to the hypothetical question: "We would object to this on the ground that the hypothetical question assumed only certain facts selected and omits others * * * ." This is a general objection as described in the above cited cases and does not constitute a basis for reversal.

In relation to the defendant's assignment of error contending that the trial court erred in refusing certain instructions submitted by it, we have carefully examined the record and are of the opinion that such refusal was proper. The court's charge to the jury was complete and clearly included all of the matters submitted by the defendant's offered instructions. This assignment is without merit.

The defendant assigns as error the giving of plaintiff's instruction No. 3 which is included in the court's charge and permits the jury, if it finds for the plaintiff, to allow interest on the principal amount from the date of death to the time of the trial. While a specific ground for its objection, as required by Rule 51, R.C.P., was not found in the record submitted to this Court, an examination of the original record reveals that such objection and grounds therefor were made and designated.

Code, 1931, 56-6-27 provides: "The jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and in all cases they shall find

the aggregate of principal and interest due at the time of the trial, after allowing all proper credits, payments and sets-off; and judgment shall be entered for such aggregate with interest from the date of the verdict." That the instant action is founded on contract is not disputed. This is a Personal Automobile Policy wherein a contractual relationship has been entered into between the insurer and insured. Thereunder, the former agrees to pay the latter a sum certain upon the happening of the event stated in the policy. When such event occurs, the death, in this case, the amount of the policy becomes due and owing. Under the provisions of the above quoted statute the jury may allow interest on the principal amount from the time the debt becomes due until the time of trial. Otherwise the phrase in the statute, "they shall find the aggregate of principal and interest due at the time of the trial", would be meaningless.

In *Williams v. Baltimore and Ohio Railroad Company,* 9 W.Va. 33, a judgment was entered in a sum greater than that sought. Although the plaintiff released the excess, the Court, referring to the same statute, said: "This state of facts may often arise under our statute which requires the jury or court to aggregate principal and interest in actions upon contract to the time of the trial, and declares that such aggregated sum shall bear interest from the date of the judgment. Code of West Va. ch. 131, sect. 14. This cause of action grew out of contract, and the jury not only had a right, but ought, to allow interest from the breach of the contract to the time of trial and aggregate the principal and interest in the verdict, so that the court could render a judgment thereon with interest from the date of the judgment." See also *Morton v. Godfrey L. Cabot, Inc.,* 134 W.Va. 55, 63 S.E.2d 861; *Mairs v. Central Trust Co.,* 127 W.Va. 795, 34 S.E.2d 742; *Hallauer v. Fire Association of Philadelphia,* 83 W.Va. 401, 98 S.E. 441; and *Shank v. Groff,* 45 W.Va. 543, 32 S.E. 248. We are of the opinion that the court did not commit error in allowing such interest.

For the reasons stated herein the judgment of the Circuit Court of Hancock County is affirmed.

*Affirmed.*